FILED

NOT FOR PUBLICATION

JUN 04 2010

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| U-HAUL INTERNATIONAL, INC., | No. 09-16244 |
| Plaintiff - Appellant, | D.C. No. 2:07-cv-01578-SRB |
| v. | |
| CLARENDON AMERICA INSURANCE CO., | MEMORANDUM[*] |
| Defendant - Appellee, | |
| and | |
| AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, | |
| Defendant. | |

Appeal from the United States District Court
for the District of Arizona
Susan R. Bolton, United States District Judge, Presiding

Argued and Submitted May 13, 2010
San Francisco, California

Before: SILVERMAN, FISHER and M. SMITH, Circuit Judges.

---

[*]This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

U-Haul International, Inc., appeals the district court's summary judgment in favor of Clarendon American Insurance Company in this contract dispute under Arizona law. We reverse and grant summary judgment to U-Haul. Specifically, we hold that the insurance agreement obligates Clarendon to pay U-Haul's Claims Expense once U-Haul has satisfied its Retained Amount through the payment of damages.

Section I(A)(1) of the insurance agreement provides that Clarendon will be responsible for paying "that portion of the Ultimate Net Loss, in excess of the Retained Amount, which the Insured has become legally obligated to pay as damages and related Claims Expense." The definition of Ultimate Net Loss in Section V(T) confirms that it encompasses damages only, and thus that Claims Expense is a separate and additional obligation.

Clarendon does not dispute that it is obligated to pay some Claims Expense, but instead interprets that term to be limited to Clarendon's own litigation costs or those it otherwise voluntarily incurs. Nothing in the definition of Claims Expense found in Section V(E) suggests any such limitation. Moreover, at least two aspects of the definition are plainly inconsistent with Clarendon's interpretation. First, the inclusion of "[i]nterest as required by law on awards or judgments" is inconsistent with a limitation to *voluntarily* incurred expenses. Second, the definition

2

specifically excludes "[s]alaries and travel expenses of employees of the *Insured*" (emphasis added), which would be unnecessary if the policy already excluded all of U-Haul's defense costs. Further, Section VII(L)(1)'s condition that Clarendon consent in writing to any "Claims Expense paid" is inconsistent with Clarendon's effort to limit Claims Expense to Clarendon's own expenses. In sum, the only plausible interpretation of Section I(A)(1) requires Clarendon to pay U-Haul's Claims Expense once U-Haul has satisfied its Retained Amount through the payment of damages.

Clarendon raised at oral argument another interpretation of the voluntariness limitation to mean that if U-Haul tenders its Retained Amount to Clarendon at the front end of a lawsuit, Clarendon then takes over the defense of the suit and must decide whether to incur further expenses toward that end. Nothing in the policy provides for or even appears to contemplate such a front-end tendering. In any event, it still does not explain the inconsistencies discussed above.

We also are unpersuaded by Clarendon's argument that other provisions in the insurance agreement conflict with Section I(A)(1) so as to create an ambiguity as to Clarendon's obligations. Section I(B)(1) provides that "[t]he defense of claims or Suits to which this policy applies is the obligation of the Insured." This language (along with Section I(B)(2)) places the burden of defense on U-Haul and

3

clarifies only that Clarendon would not itself be required to take over U-Haul's defense (also undercutting Clarendon's tendering argument); it does not address Clarendon's ultimate payment obligations once the Retained Amount is satisfied through damages. Section I(B)(2) provides: "The Insured shall pay all claim expense within the Retained Amount which relates to the defense of claims or Suits." Clarendon argues that this means that U-Haul must pay all of its own defense costs, but such an interpretation renders the phrase "within the Retained Amount" meaningless. *See Liberty Ins. Underwriters, Inc. v. Weitz Co.*, 158 P.3d 209, 212 (Ariz. Ct. App. 2007) ("Insurance policy provisions must be read as a whole, giving meaning to all terms."). Rather, the sentence reinforces our conclusion that U-Haul is responsible for its defense costs "within the Retained Amount" until it has reached the Retained Amount through the payment of damages. The second sentence in Section I(B)(2) – "However, any claim expense that is incurred by the Insured shall not be applied against the Retained Amount" – addresses the separate point that U-Haul's defense costs do not erode the Retained Amount.

Thus, Clarendon has failed either to show that the definition of Claims Expense should be limited to its own defense costs or to identify any conflicting provisions in the insurance agreement that would cast doubt on our interpretation.

We agree with the dissent that if the extrinsic evidence showed that Clarendon's policy interpretation was plausible, remand would be appropriate to allow a jury to resolve the disputed issue. *See Taylor v. State Farm Mut. Auto. Ins. Co.*, 854 P.2d 1134, 1140 (Ariz. 1993). Even under *Taylor*, however, the court may make a threshold determination regarding the evidence's persuasive value. *See id.* at 1141. Having considered Clarendon's extrinsic evidence, we conclude that none of it reasonably supports Clarendon's position on the disputed issue of who bears the responsibility for U-Haul's Claims Expense after it has satisfied its Retained Amount. The extrinsic evidence is persuasive only with regard to the now undisputed issue of whether U-Haul's payment of Claims Expense erodes its Retained Amount.

Finally, we are not troubled by the purported anomaly that "Clarendon pays nothing in the event of a defense verdict, or a verdict against U-Haul in the amount of $4,999,999.99 or less, regardless of the amount of litigation costs." Dissent at 2. The policy is consistent with limiting U-Haul's damages exposure to $5 million and leaving to U-Haul the responsibility for managing any litigation (and defense costs) when damages are less than that amount. Once that damages threshold is reached, however, Clarendon's liabilities under Section I(A)(1) are triggered, including payment of "damages and related Claims Expense."

Taking into account the language of the insurance agreement and the extrinsic evidence in the record, we hold that the policy is not reasonably susceptible to Clarendon's proffered interpretation. We reverse and remand with instructions for the district court to grant summary judgment in favor of U-Haul. *See Taylor*, 854 P.2d at 1144-45.

**REVERSED AND REMANDED.**

*U-Haul Int'l Co. v. Clarendon Am. Ins. Co.*, No. 09-16244

M. SMITH, concurring in part and dissenting in part:

While I agree with my colleagues that the district court's grant of summary judgment in favor of Clarendon must be reversed, I respectfully disagree that, drawing all reasonable inferences in favor of Clarendon, U-Haul is entitled to judgment as a matter of law. Because I believe Clarendon's interpretation of this poorly-drafted and ambiguous policy is about as reasonable as U-Haul's, I would remand to the district court for further proceedings. *See State v. Mabery Ranch, Co.*, 165 P.3d 211, 217 (Ariz. Ct. App. 2007).

U-Haul's interpretation, for the reasons explained by the majority, may ultimately be the best reading of the policy's terms. However, Arizona law permits a court to examine extrinsic evidence in order to determine if a policy is susceptible of multiple reasonable interpretations without an initial finding of ambiguity. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 854 P.2d 1134, 1140–41 (Ariz. 1993). Although I might agree that the policy viewed without the aid of extrinsic evidence is unambiguous, in light of Arizona law, I look at the extrinsic evidence and conclude that when considering that evidence in the light most favorable to the nonmoving party, Clarendon's interpretation becomes a plausible reading of the policy language. Moreover, Clarendon's interpretation is reasonable because it is more in keeping with traditional underwriting practices. For example,

under U-Haul's interpretation of the policy, Clarendon pays nothing in the event of a defense verdict, or a verdict against U-Haul in the amount of $4,999,999.99 or less, regardless of the amount of litigation costs—even if such costs amount to millions of dollars. But if U-Haul settles for or suffers a verdict of over $5 million, Clarendon pays up to $5 million in damages and *all* of the defense costs no matter how little or large the amount. On the other hand, Clarendon's interpretation of Section 1(B)(1–2) means U-Haul is obliged to either defend the suit, or instead tender the limits of its underlying insurance and turn the defense over to Clarendon.

Further, contrary to what the majority says, Clarendon did offer evidence (in the form of expert and deposition testimony) that the defined term "Claims Expense" in Section 1(A)(1) relates to the cost of its own defense of suits and that therefore the policy does not cover *U-Haul*'s defense expenses. Clarendon may ultimately deserve to lose on this argument, either because "Claims Expense" does relate to U-Haul's defense costs, or because generally insurance policies should be construed against the insurer and in favor of coverage. But I would not decide that Clarendon loses as a matter of law on this record. First, there is both direct and circumstantial evidence that the parties understood that Clarendon was not offering to provide any coverage for U-Haul's defense costs. Second, there is *no* evidence

2

suggesting that U-Haul's current interpretation of the policy was accepted by anyone until midway through the litigation (notably, U-Haul initially argued for a different interpretation altogether, and U-Haul's counsel adopted yet a *third* interpretation of the policy at oral argument). Third, it is a disputed factual issue whether U-Haul was a sophisticated party in this transaction who affirmatively participated in negotiating the key terms of coverage, thus distinguishing this case from the authorities U-Haul cites. Under the circumstances, I think the proper result would be to vacate the district court's order, and remand the case for further proceedings—and perhaps a well-justified settlement.

When interpreting a contract for insurance, our primary responsibility is to effectuate the intent of the parties. *Taylor*, 854 P.2d at 1138. The majority's reading of the policy, rejecting Clarendon's extrinsic evidence, has likely resulted in an enforcement of this policy in a way neither party intended at the time of contracting. I therefore respectfully dissent.

3